UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JTH Tax, Inc. d/b/a Liberty Tax Service and
Siempretax+ LLC,

        Plaintiffs,

19-cv-4035 (AJN)

—v—

OPINION & ORDER

Pawanmeet Sawhney,

        Defendant.

ALISON J. NATHAN, District Judge:

Now before the Court is Plaintiffs' unopposed motion for a temporary restraining order and preliminary injunction. For the following reasons, the Court GRANTS the motion IN PART.

I. **Background**

    A. **Factual Background**[1]

Plaintiffs JTH Tax, Inc. d/b/a Liberty Tax Service and SiempreTax+ LLC (collectively "Plaintiffs" or "Liberty") are the franchisors of Liberty Tax Service and SiempreTax+ income tax preparation service centers located throughout the United States. Compl., Dkt. No. 3 ¶ 12. Plaintiffs own corresponding trademarks, service marks, logos, and derivations thereof as well as branded tax service systems that advertise and promote their services through such marks. *Id.* ¶¶ 13–14. As a result of their investments in their franchise system, Plaintiffs allege that these marks have become associated with uniform, high-quality services pursuant to standards prescribed by Plaintiffs' manuals and agreements with its franchisees. *Id.* ¶¶ 15–16.

---

[1] The facts are drawn from the allegations in Plaintiffs' complaint.

In December 2015, Plaintiffs entered Franchise Agreements with Defendant Pawanmeet Sawhney for Defendant to operate tax preparation service centers located in the Bronx. *Id.* ¶¶ 24, 26. Pursuant to these agreements, Plaintiffs trained Defendant in franchise operation, marketing, advising, sales, and its business systems and gave Defendant its confidential operating, marketing, and advertising materials. *Id.* ¶¶ 27; *see, e.g.*, Dkt. No. 3-1. In exchange, in the event of termination, Defendant agreed to (1) refrain from competing with Plaintiffs within 25 miles of his former Liberty and SiempreTax+ locations and from employing or soliciting for employment his former franchise employees, Dkt. No. 3-1 ¶¶ 10(b), (d); (2) use reasonable, good faith efforts to ensure that no person or entity offer tax preparation services from his former franchise locations, *id.* ¶ 10(e); (3) immediately stop identifying as a franchisee or using the marks, sell franchise fixtures and assets to Liberty at its request, assign and transfer leases and phone numbers to Plaintiffs at their request, return all customer lists, files, information, and all operations manuals to Plaintiffs; pay all amounts due and owing to Plaintiffs, *id.* ¶ 9; and (4) not communicate, divulge, or use Liberty's confidential information and trade secrets for his personal benefit or that of any other person or entity nor for any purpose other than the operation of the Franchised business, *id.* ¶ 12(c).

In or around February and March of 2019, Plaintiffs allege that Defendant materially breached the Franchise Agreements by failing, among other things, to operate during the required hours during tax season, to submit gross receipt reports, to pay amounts due to Plaintiffs, to respond to customer complaints, or to resolve customer service issues. Compl. ¶¶ 54–59. As a consequence, on May 1, 2019, Plaintiffs terminated the Franchise Agreements. *Id.* ¶¶ 60–61. Plaintiffs allege that Defendant subsequently failed to comply with his post-termination obligations, including by (a) failing to return and, upon information and belief,

continuing to use and to disclose Liberty's confidential information; (2) refusing to refrain from any further use of the marks; (3) refusing to pay Liberty all monies due and owing; (4) refusing to transfer all telephone numbers used in connection with his Liberty and SiempreTax+ franchise locations; (5) failing to return all copies of customer files, information, tax returns and proprietary operations manual to Plaintiffs; and (6) refusing to transfer leases for his former franchise properties to Liberty despite Liberty's request. *Id.* ¶ 63. Further, on information and belief, Plaintiffs allege that Defendant has used and is still displaying Plaintiffs' marks on signage inside and outside his former offices at the Franchise Locations; and is employing former Liberty employees to prepare and electronically file tax returns on behalf of an unlawfully competing tax preparation business. *Id.* ¶¶ 64–65.

### B. Procedural Background

On June 7, 2019, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. Dkt. No. 10. The Court ordered Plaintiffs to serve their motion on Defendant and file proof of service on Defendant by June 12, 2019. Dkt. No. 11. Plaintiffs complied. Dkt. No. 12. The Court also ordered a briefing schedule on Plaintiffs' motion, with Defendant to respond by June 17, 2019 and Plaintiffs to file their reply by June 21, 2019. Dkt. No. 11. As of this date, Defendant has not responded or otherwise appeared in this action.

## II. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). As a general matter, a party seeking a preliminary injunction "must . . . show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in

the public interest." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter*, 555 U.S. at 20). Even if a plaintiff has not demonstrated a likelihood of success on the merits, a preliminary injunction may still be granted if the plaintiff shows "a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010). The same standard governs consideration of an application for a temporary restraining order. *See Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016); *Spencer Trask Software & Info. Servs., LLC v. RPost Intern. Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).

### III. Analysis

#### A. Choice of Law

The Court turns first to choice-of-law analysis. Although Plaintiffs bring a federal question action, their motion for injunctive relief is predicated on the likelihood of success of their state law claims. For the reasons that follow, their motion is therefore governed by both federal law and the state law applicable to those claims.

As an initial matter, "[t]he question whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are sometimes relevant to the decision to grant or deny." *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987). The same logic applies to Plaintiffs' motion: federal law governs the motion except insofar as state law is relevant to Plaintiffs' pendant state breach of contract claims.

Plaintiffs maintain that their state law claims in this action are governed by Virginia law because their Franchise Agreements with Defendant contain a broad choice-of-law clause

4

providing that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, or dealings between [the franchisee] and any of the Affiliated Companies" as that term is defined in the agreements. Dkt. No. 3-1 ¶ 17.a; Dkt. No. 3-2 ¶ 17.a ; Dkt. No. 3-3 ¶ 17.a. The Court agrees.

In this forum, the scope of a choice-of-law provision is a threshold question governed by New York law. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005). In a breach of contract action,[2] New York courts will "[g]enerally . . . enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction" and the agreement does not violate public policy. *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500–01 (N.Y. 2006). That one of the parties has its principal place of business in the selected forum is generally sufficient to satisfy the reasonable relationship test. *See Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017); *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05-cv-9640 (PKL), 2009 WL 935665, at *9–10 (S.D.N.Y. Apr. 7, 2009). Liberty's principal place of business in Virginia meets this standard, and there is no indication that Virginia's breach of contract law violates public policy. *See Welsbach*, 859 N.E.2d at 501. Accordingly, Virginia law governs the breach of contract analysis in this action.

B.    **Plaintiffs Seek a Prohibitory Injunction**

Next, the Court must determine whether Plaintiffs' motion is subject to the heightened "clear" or "substantial" showing standard applicable to mandatory injunctions. A mandatory preliminary injunction—i.e., an injunction that alters the status quo by commanding some

---

[2] Although courts have been more reluctant to construe choice-of-law clauses broadly to encompass extra-contractual causes of action, *see Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005), that issue is not presented here, in which the only pendant state claims sound in contract.

positive act—should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quotation omitted). In contrast, a prohibitory preliminary injunction seeking only to maintain the status quo need not meet this additional "clear" or "substantial" showing requirement. *Id.* Although "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics," and might appear in a breach of contract case to depend upon whether one takes the plaintiff's or the defendant's perspective, the Second Circuit has suggested that an action that merely seeks to enforce the terms of an agreement may constitute a prohibitory injunction. *See id.* Accordingly, at least in the absence of any indication that damages would be insufficient to compensate Defendant should he ultimately prevail, Plaintiffs' preliminary injunction is likely subject only to the ordinary preliminary injunction standard.[3]

### C. Plaintiffs Are Entitled to Injunctive Relief

Turning to the merits, the Court concludes that Plaintiffs have met their burden of showing entitlement to some, but not all, of the injunctive relief requested.

As an initial matter, the Court notes that Plaintiffs' request for injunctive relief does not precisely match the terms of the Franchise Agreements on which it is predicated. *Compare, e.g.*, Proposed Order, Dkt. No. 10-2 ¶ I (enjoining Defendant from "diverting or attempting to divert any customer or business from Plaintiffs") *with* Dkt. No. 3-1 ¶ 10.d (barring Defendant from soliciting persons or entities served by his prior Liberty offices within the past twelve months for the purposes of offering such persons income tax preparation or similar products). Because

---

[3] In any event, as the analysis below indicates, Plaintiffs have met the heightened mandatory injunction standard by demonstrating a high likelihood of success on the merits and a clear showing that they are entitled to the relief requested.

much of Plaintiffs' motion argues that the requested relief is warranted precisely because it enforces provisions of the underlying agreements, the Court evaluates whether Plaintiffs are entitled to relief that matches the terms of those agreements.

### 1. Plaintiffs Have Shown a Likelihood of Irreparable Harm in Part

Turning to the first prong in the preliminary injunction analysis, Plaintiffs contend that Defendant's actions, if not enjoined, present a risk of irreparable harm due to a loss of customer good will and business relationships and a risk of irreparable harm to their future franchise arrangements. The Court agrees that Plaintiffs' uncontested submissions make out the former showing.

Showing a likelihood of irreparable harm is "perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quotation omitted); *see also Am. Broad. Cos. v. Aereo Inc.*, No. 12-cv-1540 (AJN), 2012 WL 3854042, at *24 (S.D.N.Y. July 11, 2012). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling*, 295 F.3d at 214 (internal quotation marks omitted). In addition, the harm must be "neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted).

Courts in this circuit have repeatedly affirmed that the "loss of client relationships and customer good will built up over the years" may "constitute[ ] irreparable harm for purposes of imposing a preliminary injunction." *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*,

468 F. App'x 43, 46 (2d Cir. 2012) (summary order) (internal quotation marks omitted); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) (citing cases). At the same time, irreparable harm is not "inevitably . . . assumed in breach of covenant cases," and "instead depends upon the factual particulars in each case." *Singas*, 468 F. App'x at 46 (quotation omitted); *see also Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 195 (E.D.N.Y. 2013) ("Despite the amorphous nature of good will, courts require some factual predicate to support a finding that, absent an injunction, there is an imminent danger that a party's good will will be irreparably harmed."). Although courts' discussions of this topic generally relate to alleged violations of noncompete agreements found to be reasonable under *New York* law, *see, e.g.*, *Singas*, 468 F. App'x at 45–46, the Court sees no reason why the same principles would not extend to noncompete agreements that are found to be enforceable under Virginia law.

Here, Plaintiffs argue that Defendant's breach of his post-termination obligations under the Franchise Agreements—including his alleged refusal to return proprietary information, client information, lists, and tax return records and his alleged failure to assign telephone numbers and lease agreements—causes irreparable harm to their goodwill, reputation, and relationships with customers in the franchise area. Br., Dkt. No. 10-1 at 9. Taken together with the undisputed allegations in the complaint that, in violation of the return, assignment, and noncompete provisions of the Franchise Agreements, Defendant has continued to use and display Liberty marks and to employ former Liberty employees to prepare and electronically file tax returns in an unlawfully competing tax preparation business at the locations of his former Liberty franchises, *see* Compl. ¶¶ 63–65, the Court agrees that Plaintiffs have shown that they face a risk of irreparable harm to their customer good will and business relationships. Indeed, courts

8

regularly find similar complaints sufficient to make out irreparable harm. *See, e.g., JTH Tax, Inc. v. Donofrio*, No. 2:06-cv-47, 2006 WL 2796841, at *5 (E.D. Va. Sept. 26, 2006) (finding defendant's tax preparation in close proximity to previous Liberty office sufficient to demonstrate irreparable harm to customer base or goodwill); *Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*, No. 07-cv-1562 (ERK)(RML), 2008 WL 207843, at *7–8 (E.D.N.Y. Jan. 24, 2008) (finding irreparable harm based upon evidence of continued solicitation and a campaign to lure away the plaintiff's biggest customer could result in more than the calculable loss of sales); *Cellairis Franchise, Inc. v. Duarte*, No. 15-cv-101 (WCO), 2015 WL 6517487, at *4, 8 (N.D. Ga. Oct. 21, 2015) (finding irreparable harm based upon evidence Defendant was actively engaged in operating competing businesses).

However, at least on their present submissions, Plaintiffs fall short of showing irreparable harm in the absence of injunctive relief enforcing the full extent of their noncompete agreement. Plaintiffs do not show a likelihood of harm based upon Defendant's operation of a competing tax preparation business without any of the marks or other identifying features of Plaintiffs' business from some location other than the existing franchises; indeed, they do not even show that the operation of such a business is likely. At most, Plaintiffs' submission speculates that Defendant could, at some later date, attempt to operate such a business. As presented to the Court, this speculation falls short of showing that irreparable harm to Plaintiffs' consumer good will or business relationships from the operation of such a business is actual and imminent. *See, e.g., Baker's Aid*, 830 F.2d at 16 (affirming rejection of motion for injunctive relief when plaintiff's attempt to prove irreparable harm depended upon conclusory allegations); *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, No. 10-cv-8976 (RJH), 2011 WL 497978, at *8–9 (S.D.N.Y. Feb. 10, 2011) (evaluating asserted harms to goodwill or reputation on a fact-specific, location-

by-location basis), *aff'd*, 468 F. App'x at 47. Nor do Plaintiffs identify a likelihood of irreparable harm based upon the general consequences of failing to enforce their franchise agreements. Although Plaintiffs identify a concern that the value of one of Plaintiffs' franchises "would decline precipitously if a franchisee knew others could, without adverse consequence, use and retain for their own benefit" the advantages of having had access to Liberty's system and resources, Br. at 9–10, Plaintiffs fail altogether to explain why an award of damages in the ordinary course of a civil breach of contract action would constitute insufficient "adverse consequences" to deter such franchisee behavior and otherwise to protect the franchise relationship. *See Pirtek USA, LLC v. Zaetz*, 408 F. Supp. 2d 81, 86 (D. Conn. 2005) (noting that "a denial of [a] preliminary injunction does not mean that [the franchisor] will be unable to enforce the covenant," but simply means that it must do so "at a later stage of the legal proceedings"); *Singas*, 2011 WL 497978, at *8 (agreeing with this logic); *but see ServiceMaster Residential/Commercial Serv., L.P.*, No. 01-cv-2229 (JSM), 2001 WL 396520, at *4 (S.D.N.Y. Apr. 19, 2001) (crediting a risk of danger to the franchise system as supporting a finding of irreparable harm).

Taken together, Plaintiffs' uncontested allegations are therefore sufficient to show a risk of irreparable harm to their goodwill and business relationships stemming from Defendant's alleged conduct in violation of the Franchise Agreements. But they are not sufficient to show a risk of irreparable harm based upon speculation that Defendant may violate their noncompete agreement or based upon redressable harms to their franchise relationships. Accordingly, the Court evaluates whether injunctive relief limited to the irreparable harms Plaintiffs have shown are actual or imminent is warranted.

### D. Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs have also successfully satisfied their burden of showing they are likely to succeed on the merits of their claims that Defendant breached the noncompetition, confidentiality, and non-solicitation provisions of the Franchise Agreements.

To make out a claim for breach of contract, Virginia law requires the plaintiff to prove "(a) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004).

### 1. Defendant Had Legally Enforceable Obligations to Plaintiffs

First, Plaintiffs are likely to prove that Defendant had a legally enforceable obligation to them. Under Virginia law, post-termination covenants are enforceable if the restraints therein are "no greater than necessary" to protect a "legitimate business interest," "not unduly harsh and oppressive in curtailing [an employee's] legitimate efforts to earn a livelihood," and "reasonable from the standpoint of sound public policy." *Simmons v. Miller*, 544 S.E.2d 666, 678 (Va. 2001). Access to confidential information generally makes a covenant not to compete more reasonable. *See Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 826–27 (E.D. Va. 2011). Virginia courts typically apply the same legal standard to noncompete and non-solicitation provisions, with particular emphasis in the latter context on whether "the former employee had direct customer contact or substantial knowledge of the employer's confidential information or methods of operation." *Hair Club for Men, LLC v. Ehson*, No. 16-cv-236, 2016 WL 3636851, at *4 (E.D. Va. May 6, 2016) (quotation omitted).

The post-termination covenants at issue here are likely enforceable under this standard. The confidentiality and return of business materials provisions of the Franchise Agreements

plainly raise no risks under any of these prongs and simply serve to safeguard Plaintiffs' confidential business materials.

The non-solicitation provision, for its part, appears to fall squarely within the realm of typically enforceable restraints under Virginia law. In the noncompete context, Virginia courts have found restrictions reasonable restraints of trade when they were targeted towards (a) former employees who were familiar with their employers' operations; (b) activity of the same type as that actually engaged in by the former employer, or with which the employee was directly familiar; (c) an area limited to the employers' previous territory; and (d) limited periods of two to three years. *See, e.g., Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 389 S.E.2d 467, 469–70 (Va. 1990). Although the twenty-five-mile limitation in the non-solicitation provisions at issue here may be less necessary in a dense urban environment like New York City than similar limitations found enforceable in other geographic locations, *see, e.g., Hair Club for Men, LLC v. Ehson*, No. 16-cv-236, 2016 WL 4577019, at *4–5 (E.D. Va. Aug. 31, 2016) (finding 20-mile noncompete limitation enforceable), in light of the confidential materials at issue here and the availability of nearby markets outside of the proscribed radius in which Defendant could pursue tax preparation, the Court cannot find the limitation greater than necessary to protect Plaintiffs' business interests. In the non-solicitation context, this conclusion is underscored by Defendant's status as a franchisee with substantial knowledge of confidential customer information and methods of operation weighs in further favor of enforcement. *Contra Lasership, Inc. v. Watson*, No. CL-2009-1219, 2009 WL 7388870, at *8 (Va. Cir. Aug. 12, 2009) (declining to enforce non-solicitation agreement barring former employee from soliciting former customers for any reason or for any purpose); *Hair Club*, 2016 WL 4577019, at *5–6 (finding unenforceable non-solicitation agreement that placed a burden on the former employee to know

all customers invoiced by the employer at any of the employer's locations and that banned dealing with any business in the relevant field that served such customers directly or indirectly).

Further, given the non-solicitation provision's allowance that Defendant may solicit prior Liberty customers for tax preparation services outside of the geographic limitation or engage in other, similar solicitation without limitation, the submissions before the Court contains no suggestion that the limitation at issue will severely burden Defendant's capacity to earn a livelihood. *See Brainware*, 808 F. Supp. 2d at 826 ("[T]his is not a case where the non-compete clause effective prohibits the employee from working in virtually any capacity for a competitor.") (internal quotation marks omitted). Nor are there any apparent public policies implicated by the non-solicitation provision at issue here.

As to the noncompete provisions, because Plaintiffs have not made out a showing that they face a risk of irreparable harm in the nonenforcement of the full scope of those provisions, the Court need only consider whether a noncompete provision barring Defendant from competing with Plaintiffs through tax preparation services at their prior franchise locations within the two-year time limit is enforceable. As this restriction is much less onerous than the 25-mile non-solicitation provision, the analysis above applies in this context with even greater force, and the Court finds the noncompete provision not greater than necessary, not unduly harsh, and not in violation of public policy.

In sum, in the absence of any evidence of unreasonable burdens imposed upon the Defendant and in light of the contractual language and all of the circumstances presently before the Court, the Court finds the non-solicitation and nondisclosure provisions of the Franchise Agreements, in addition to a limited version of the noncompete provision, "strike an appropriate balance" between Defendant's "right to secure gainful employment" and Plaintiffs' "legitimate

interest in protection against direct competition" by a former franchisee gained through his franchise arrangements with Plaintiffs. *Brainware, Inc.*, 808 F. Supp. 2d at 829.

### 2. Defendant Breached his Obligation

Plaintiffs have also shown that they are also likely to prevail in proving that Defendant breached the above-described provisions. According to the uncontested allegations in the complaint, Defendant has failed to return customer files and tax return records, transfer leases and telephone numbers, cease use of Plaintiffs' marks, refrain from using Plaintiffs' confidential information, refrain from employing Plaintiffs' employees, or refrain from utilizing Plaintiffs' storefronts to continue to solicit business. *See* Compl. ¶¶ 63–65.

### 3. Plaintiffs Were Damaged by Defendant's Breach

Finally, Plaintiffs are likely to prevail in proving that they were damaged by Defendant's breach. Virginia law entitles plaintiffs to recover damages for misappropriated trade secrets or violations of confidentiality agreements, *see Am. Sales Corp. v. Adventure Travel, Inc.*, 862 F. Supp. 1476, 1479 (E.D. Va. 1994) (citing Va. Code. Ann. § 59.1-338), while plaintiffs who can prove that the loss of goodwill or harm to reputation occasioned by violations of noncompete or non-solicitation agreements resulted in lost profits may recover such lost profits as damages for the breach, *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 824–25 (E.D. Va. 2007). Although Plaintiffs' complaint does not contain allegations as to the precise measure of the lost profits resulting from Defendant's breach, their uncontested allegations show that they will likely prevail in proving such damages at a later stage of this litigation.

* * *

Accordingly, for all of the reasons given above, the Court concludes that Plaintiffs are likely to prevail on the merits on their breach of contract claims.

### E. The Balance of Hardships Weighs in Plaintiffs' Favor

Plaintiffs have also carried their burden of demonstrating that the balance of hardships weighs in their favor. Although injunctive relief enforcing the assignment, return, limited noncompete, non-solicitation, and confidentiality provisions of the franchise agreements will burden Defendant by requiring him to transmit materials to Plaintiffs and by restraining him from working in a tax preparation business at the franchise locations or soliciting such business from former customers within the proscribed territory, in granting such relief, the Court would be enforcing contractual obligations to which Defendant freely agreed and in exchange for which Defendant received the benefits of the franchise arrangement. *See, e.g., JTH Tax*, 514 F. Supp. 2d at 825–26 (granting a permanent injunction on similar basis). Under these circumstances, the limitations the requested injunction imposes on Defendant do not outweigh ongoing harm to Plaintiffs' goodwill and business relationships.

### F. Awarding Plaintiffs Injunctive Relief Would Serve the Public Interest

Finally, the Court agrees with Plaintiffs that injunctive relief would serve the public interest by ensuring that reasonable restrictive covenants into which the parties voluntarily entered are enforced and protecting Plaintiffs' legitimate interests in maintaining the value of their business relationships.

## IV. Conclusion

For the reasons given above, Plaintiffs' motion for a temporary restraining order is hereby GRANTED IN PART. Because the Court concludes that Plaintiffs demonstrated a risk of most, but not all, of their claimed irreparable harms in the absence of injunctive relief, the Court issues a modified version of their proposed order for injunctive relief. The Court finds that only the following relief is necessary to ensure that irreparable harm to Plaintiffs' goodwill and

business relationships is prevented, and accordingly ORDERS that Defendant:

A. Transfer all telephone numbers associated with his former Liberty and SiempreTax+ locations to Liberty in accordance with ¶ 9.e of the Franchise Agreements;

B. Assign all lease agreements for properties at which his former Liberty and SiempreTax+ franchise locations operated during the effective term of the Franchise Agreements to Liberty in accordance with ¶ 9.f of the Franchise Agreements;

C. Return all confidential information (including, but not limited to, Plaintiffs' confidential and proprietary Operations Manual) and trade secrets of Plaintiffs to Liberty in accordance with ¶ 9.g and 9.i of the Franchise Agreements;

D. Return all electronic and paper copies of customer lists, information, and tax returns to Liberty in accordance with ¶ 9.g and 9.h of the Franchise Agreements;

E. Be enjoined from any future breach of the noncompetition covenants set forth in ¶ 10.b of the Franchise Agreements, except that the injunction shall be limited to attempts to compete with Plaintiffs at the former Franchise Locations specified in those agreements;

F. Be enjoined from holding out to the public as a current or former Liberty franchisee, in accordance with ¶ 9.b of the Franchise Agreements;

G. Be enjoined from using the Marks or any confusingly similar name, devise, mark, service mark, trademark, trade name, slogan, or symbol in accordance with ¶ 9.b and 9.c of the Franchise Agreements;

H. Be enjoined from using or disseminating any of Liberty's confidential information

and/or trade secrets in accordance with ¶ 12 of the Franchise Agreements;

I. Be enjoined from violating the non-solicitation covenants set forth at ¶ 10.d of the Franchise Agreements.

This resolves docket item number 10.

A copy of this Opinion and Order shall be served on Defendant and proof of such service shall be filed on the public docket within 5 days of the date hereof.

SO ORDERED.

Dated: July \_\_\_\_, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge