UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JTH Tax, Inc. d/b/a Liberty Tax Service and
SiempreTax+ LLC,

                Plaintiffs,

–v–

Pawanmeet Sawhney,

                Defendant.

19-cv-4035 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

      Before the Court is the Plaintiffs' motion for default judgment. For the following reasons, the Court grants the motion in part and denies it in part.

**I.    Background**

      Plaintiffs JTH Tax, Inc. d/b/a Liberty Tax Service and Siempre Tax+ LLC brought this suit against former franchisee Pawanmeet Sawhney on May 7, 2019, alleging trademark infringement, breach of contract, and trade secret misappropriation. Dkt. No. 3. The Plaintiffs promptly served the Defendant, but the Defendant never entered an appearance or defended the suit. Dkt. No. 20. In June 2019, the Court granted in part the Plaintiffs' motion for a temporary restraining order. Dkt. No. 14. The Plaintiffs obtained a clerk's certificate of default later that summer and filed the instant motion for default judgment in December. Dkt. Nos. 22, 25, 32. In accordance with Rule 3.L of the Court's Individual Practices in Civil Cases, the Plaintiffs served their motion for default judgment and supporting paperwork on the Defendant and filed an affidavit of service on the public docket. Dkt. No 34. The Defendant still has not appeared, and so the Court deems the motion unopposed.

1

The Plaintiffs' complaint alleges as follows. Liberty is a franchisor of the Liberty Tax Service and SiempreTax+ brands of tax preparation centers. Complaint, Dkt. No. 3, ¶ 12. In December 2015, the Defendant entered into an agreement with Liberty to operate a Liberty tax preparation center franchise. Compl. ¶ 24; *see* NY158 Liberty Franchise Agreement, Dkt. No. 3, Ex. A. In December 2016, the Defendant entered into agreements with Liberty and SiempreTax+ to operate two more franchises. Compl. ¶ 26; *see* NY606 Liberty Franchise Agreement, Dkt. No. 3, Ex. B; NY606 SiempreTax+ Franchise Agreement, Dkt. No. 3, Ex. C. The agreements granted the Defendant license to use Liberty's federally registered trademarks for their duration. Compl. ¶¶ 13, 29. Pursuant to the agreements, Liberty trained the Defendant in franchise operation, marketing, advertising, sales, and its business systems and gave the Defendant confidential operations and marketing materials. *Id.* ¶ 27. The Plaintiffs also loaned the Defendant almost $900,000 secured by three promissory notes executed in 2015, 2016, and 2018, with interest accruing at a rate of twelve percent per annum. Compl. ¶¶ 45–50; *see* 12-21-15 Promissory Note, Dkt. No. 3, Ex. D; 12-6-16 Promissory Note, Dkt. No. 3, Ex. E; 11-7-18 Promissory Note, Dkt. No. 3, Ex. F. In the notes, the Defendant agreed to pay all attorney's fees and costs incurred by the Plaintiffs in connection with collection or enforcement of the notes. Compl. ¶ 50.

The Plaintiffs allege that the Defendant breached the franchise agreements by failing to submit gross receipt reports, make timely payments, maintain operations during the 2019 tax season, and pay workers' compensation premiums. *Id.* ¶¶ 54–59. The Plaintiffs sent eight notices to the Defendant demanding he cure the breaches. On May 1, 2019, they terminated the franchise agreements. *Id.* ¶¶ 60–61.

The Plaintiffs brought suit for breach of the franchise agreements; breach of the promissory notes; misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; and federal trademark infringement, false designation and misrepresentation of origin, and dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a)-(c). *Id.* ¶¶ 72–91, 108–139.

In the instant motion for default judgment, the Plaintiffs seek a permanent injunction, a monetary award of $880,995.46, attorneys' fees and costs, pre- and post-judgment interest, and an order requiring the Defendant to comply with all post-termination obligations under the franchise agreements.

## II.   Legal Standard

Federal Rule of Civil Procedure 55 sets out a two-step procedure for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 128 (2d Cir. 2011); Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop,* 645 F.3d at 128. Rule 54(c) states, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The district court must still determine

3

whether the allegations in the complaint state a claim upon which relief may be granted.  *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

**III.    Discussion**

The Defendant has not participated in this litigation, despite service of the Complaint and the instant motion.  The Court therefore accepts as true all well-pleaded allegations in the complaint but must still determine whether those allegations establish a legal basis for liability. *Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also* Fed. R. Civ. Pro. 8(b)(6) ("An allegation— other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  The Court thus examines "whether [the] plaintiff's allegations are *prima facie* sufficient to demonstrate liability for the cause of action as to which they are seeking a default judgment."  *Morozov v. ICOBOX Hub Inc.*, No. 18-cv-3421 (GBD) (SLC), 2020 WL 5665639, at *1 (S.D.N.Y. May 5, 2020), *report and recommendation adopted*, No. 18-cv-3421 (GBD) (SLC), 2020 WL 5665563 (S.D.N.Y. Aug. 18, 2020).

However, more is required for damages.  "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  The district court instead must conduct an inquiry consisting of two tasks: (1) "determining the proper rule for calculating damages"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule."  *Id*.  The court may award only those damages it can ascertain with "reasonable certainty."  *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

4

The Court considers first whether the Plaintiffs have made out a prima facie case for each of their claims; second, whether they have demonstrated that they are entitled to a permanent injunction; and finally, whether they have established damages with reasonable certainty.

**A.     Liability**

      **1.     The Plaintiffs Have Established a Prima Facie Case for Breach of Contract.**

Each of the franchise agreements and promissory notes included a choice-of-law provision stating that Virginia law shall govern the agreement.  *See* NY158 Liberty Franchise Agreement at 22; NY606 Liberty Franchise Agreement at 22; NY606 SiempreTax+ Franchise Agreement at 22; 12-21-15 Promissory Note at 3; 12-6-16 Promissory Note at 3; 11-7-18 Promissory Note at 3.

New York law governs the applicability of the choice-of-law provision.  *See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005).  New York courts will generally enforce such provisions in breach of contract actions "so long as the chosen law bears a reasonable relationship to the parties or the transaction" and the agreement does not violate public policy.  *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500-01 (N.Y. 2006).  Because Liberty's principal place of business is in Virginia, the reasonable relationship test is satisfied.  *See Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017); *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05-cv-9640 (PKL), 2009 WL 935665, at *9-10 (S.D.N.Y. Apr. 7, 2009).  There is no indication that application of the choice-of-law provision would violate public policy.  *See Welsbach*, 859 N.E.2d at 501.  Accordingly, Virginia law governs the Plaintiffs' claims for breach of contract.

Virginia law requires a plaintiff to prove the following to establish breach of contract: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or

5

breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

Applying this test and accepting the Plaintiffs' alleged facts as true, the Defendant owes legally enforceable obligations to the Plaintiffs under both the franchise agreements and promissory notes. The notes state that in the event of default—including termination of the franchise agreements—the unpaid balances on the notes and all accrued interest would become "immediately due and payable." Compl. ¶¶ 51–52; *see, e.g.*, 12-21-15 Promissory Note at 2. The Defendant violated this obligation by failing to pay the Plaintiffs outstanding amounts due upon termination of the franchise agreements. The Plaintiffs have also plausibly alleged numerous breaches of the franchise agreements, including failing to submit gross receipts, failing to make required payments, and discontinuing operations during the 2019 tax season. *See* Compl. ¶¶ 54–62; NY158 Liberty Franchise Agreement at 4–6, 13–15. As a result of these breaches, the Plaintiffs have suffered damages, including lost revenues. The Court therefore concludes that the Plaintiffs have made out a prima facie case for breach of contract.

### 2. The Plaintiffs Have Established a Prima Facie Case for Trade Secret Misappropriation.

The Defend Trade Secrets Act of 2016 ("DTSA") provides a federal cause of action for trade secret misappropriation. It authorizes suit (1) by "[a]n owner of a trade secret" (2) "that is misappropriated" (3) "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "As the requirements for showing a misappropriation of a trade secret under the DTSA are similar to those for misappropriation under New York law, district courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." *ExpertConnect, L.L.C. v. Fowler*, No. 18-cv-4828 (LGS), 2019 WL 3004161, at *4 n.1 (S.D.N.Y. July 10, 2019) (internal

citation omitted) (collecting cases); *see also Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) ("The elements for a misappropriation claim under New York law are fundamentally the same [as those under federal law]." (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999))).

The DTSA defines a trade secret to include "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . if— (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value . . . from not being generally known . . . ." 18 U.S.C. § 1839(3). Courts have generally held that "customer lists" constitute trade secrets, at least where "customers are not readily ascertainable and in which patronage has been secured only through the expenditure of considerable time and money." *N. Atl. Instruments*, 188 F.3d at 47. Misappropriation includes improper "acquisition of a trade secret" or "disclosure or use of a trade secret . . . derived from or through a person who owed a duty to the person seeking relief to . . . limit the use of the trade secret." 18 U.S.C. § 1839(5). Several courts in this district have held that improper use or retention of confidential information by former employees is actionable under the DTSA. *See, e.g.*, *Medidata Sols., Inc., v. Veeva Sys. Inc.*, No. 17-cv-589 (LGS), 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018); *AUA Private Equity Partners, LLC v. Soto*, No. 17-cv-8035 (GHW), 2018 WL 1684339, at *6 (S.D.N.Y. Apr. 5, 2018).

The Plaintiffs have alleged that the Defendant had access to its confidential customer lists; that it improperly retained and continued to use those customer lists in violation of the franchise agreements; and that the customer lists related to a service (tax preparation services) used in interstate commerce. Compl. ¶¶ 34, 38, 62, 115–119. They have therefore established a prima facie case for trade secret misappropriation.

### 3. The Plaintiffs Have Established a Prima Facie Case for Violations of the Lanham Act.

"[I]t is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986)). "[I]n either a claim of trademark infringement under § 32 or a claim of unfair competition under § 43, a prima facie case is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." *Lois Sportswear*, 799 F.2d at 871. The requirements for liability differ only in that 15 U.S.C. § 1114 requires a federally registered mark. *See* § 1114(1)(a).

The Second Circuit assesses the likelihood of confusion using the balancing test from *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). *Lois Sportswear*, 799 F.2d at 871. However, an exhaustive review of the eight *Polaroid* factors is not necessary here: the Plaintiffs allege that the Defendant continued using its exact marks in its exact business at the same locations where it had previously operated as a franchisee, with the purpose of deceiving its customers. *See* Compl. ¶¶ 124–127. The Court therefore finds that the Plaintiffs have established a prima facie case for trademark infringement and false designation of origin.

However, the Plaintiffs have not alleged facts sufficient to support an inference that their marks are famous as required for a claim for trademark dilution. Only the owner of a "famous mark" has a remedy for dilution. 15 U.S.C. § 1125(c)(1). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A). "[T]he requirement that the mark be

'famous' and 'distinctive' significantly limits the pool of marks that may receive dilution protection." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009). Mere "niche fame" is not enough. *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 450 (2d Cir. 2004). Beyond the general statement that "Liberty advertises and promotes the Marks throughout the United States," Compl. ¶ 14, the Plaintiffs do not allege any facts related to the duration and extent of advertising, the amount of sales, or the extent of actual recognition of the mark. *See* § 1125(c)(2)(A). The Court therefore finds that the Plaintiffs have not established a prima facie case for trademark dilution.

### B. Injunctive Relief

The Plaintiffs seek a permanent injunction requiring the Defendant to comply with certain post-termination obligations, return confidential materials, and desist from using the Plaintiffs' trademarks. The Court previously granted in substantial part the Plaintiffs' request for a temporary restraining order along substantially the same lines. The Court finds that the permanent injunction factors also favor relief and so will enter a permanent injunction.

A party seeking a preliminary injunction must show "a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The standard for a permanent injunction is similar; as set forth in *eBay Inc. v. MercExchange, L.L.C.*, the plaintiff must establish: "(1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 677 (S.D.N.Y. 2015) (citing *eBay Inc. v. MercExchange, L.L.C.*, 57 U.S. 388, 391 (2006)); *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546–47 (S.D.N.Y. 2015) (applying this standard to a request for injunctive relief in a motion for default judgment).

The Plaintiffs' request for permanent injunctive relief is much the same as their request for preliminary injunctive relief. The Court previously found that the Plaintiffs had established a likelihood of irreparable injury, that the balance of equities favored injunctive relief, and that an injunction was in the public interest for most of the relief the Plaintiffs seek. Specifically, the Court found that the Plaintiffs were entitled to a temporary restraining order with respect to the Defendant's refusal to return proprietary and client information, lists, and tax return records; his failure to assign telephone and lease agreements to the Plaintiffs, his continued use and display of Liberty's marks; and his continued employment of former Liberty employees in an unlawfully competing tax preparation business at the locations of his former franchises. *See* Dkt. No. 14.

However, this Court determined that the Plaintiffs had not demonstrated a likelihood of irreparable harm with respect to the portion of the noncompete agreement that prohibits the Defendant from operating a competing tax preparation business at another location. *Id.* at 10. Thus, with respect to the noncompete agreement, this Court only granted a preliminary injunction enjoining the Defendant from attempting to compete with the Plaintiffs at his prior franchise locations. *Id.* at 16.

For the reasons stated in the Court's opinion and order granting in part the Plaintiffs' motion for a temporary restraining order, the Court finds that the first, third, and fourth *eBay* factors favor injunctive relief except as to operation of a competing business at a non-franchise location. Moreover, "[b]ecause the losses of reputation and goodwill and resulting loss of

customers are not precisely quantifiable, remedies at law cannot adequately compensate [Plaintiffs for their] injuries." *U.S. Polo Ass'n, Inc. v. PRL Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011) (citing *Nw. Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*, 937 F.2d 77, 80 (2d Cir. 1991)).

The Plaintiffs also seek an order requiring the Defendant to remove all signage and materials suggesting affiliation with Liberty from his former franchise locations—relief that they did not seek in their motion for a temporary restraining order. The "loss of client relationships and customer good will built up over the years" can demonstrate that irreparable harm will occur without equitable relief. *See Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) (collecting cases). No adequate remedy at law exists for the same reason. The balance of equities also tips in favor of the granting the Plaintiffs this relief because the Defendant agreed by contract not to use Liberty signage after termination of the franchise agreements. *See, e.g.*, *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 825–26 (E.D. Va. 2007). Further, an injunction would serve the public interest by ensuring that reasonable and valid restrictive covenants are enforced.

The Court will therefore enter a permanent injunction along the lines of the temporary restraining order currently in effect, with the addition that the Defendant shall remove all signage suggesting an affiliation with the Plaintiffs.

**C. Damages and Fees**

A plaintiff's allegations of damages are not deemed true for purposes of a motion for default judgment, and the court can award only those damages that the plaintiff's evidence allows the court to ascertain with reasonable certainty. The Plaintiffs have not provided enough

evidence of their damages, and so the Court must deny their motion as to damages without prejudice to re-filing.

The Plaintiffs seek an award of "at least $880,995.46 plus interest" in their motion for default judgment.  Motion for Default Judgment, Dkt. No. 32, at 4.  However, the basis for this specific amount is unclear.  In their complaint, the Plaintiffs allege an outstanding balance on the promissory notes as of April 30, 2019, as follows: $562,764.90 on the December 21, 2015 note, $144,523.75 on the December 6, 2016 note, and $85,874.70 on the November 7, 2018 note, for a total of $793,163.35.  *See* Compl. ¶¶ 85–88.  The Plaintiffs attached as exhibits to their complaint two letters they sent to the Defendant in 2019 demanding payment of outstanding balances of $254,849.92 and $959,089.45, but they did not provide an accounting of payments made under each of the notes.  *See* Dkt. No. 3, Exs. G, H.  They do not explain how they calculated the amount of damages they now seek, nor do they cite to any evidence in their motion for default judgment supporting their calculation.  These submissions fall short of enabling the Court to ascertain damages with reasonable certainty.

The Plaintiffs also seek an order that the Defendant pay all of their attorneys' fees and costs in an amount to be determined after entry of this Order.  *See* Motion for Default Judgment at 4.  The promissory notes provide that the Defendant will pay all attorneys' fees and costs incurred in connection with the collection or enforcement of the notes.  *See* Compl. ¶ 50; *see, e.g.*, 12-21-15 Promissory Note at 1.  The franchise agreements do not contain such a provision.  Because the availability of fees may vary as between the Plaintiffs' claims, and because the Plaintiffs have not provided a basis on which to assess whether the fees they incurred were reasonable, the Court also denies without prejudice their request for fees.  *Cf. Phillips v. Pizza*, No. 17-cv-6112 (JPO), 2018 WL 2192189, at *2 (S.D.N.Y. May 14, 2018) ("The reference point

for determining the fees is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The Plaintiffs should include the amount of fees sought, supported by appropriate evidence, in any subsequent motion for fees.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the Plaintiffs' motion for default judgment as to liability for breach of contract, misappropriation of trade secrets, trademark infringement, and false designation of origin. The Court DENIES the Plaintiffs' motion for default judgment as to liability for trademark dilution. The Court DENIES without prejudice the Plaintiffs' motion for default judgment as to damages and attorneys' fees.

The Court enters a permanent injunction ORDERING that the Defendant:

A. Transfer all telephone numbers and lease agreements associated with his former Liberty and SiempreTax+ locations to Liberty in accordance with ¶¶ 9.e and 9.f of the franchise agreements;

B. Return all confidential information (including, but not limited to, Plaintiffs' confidential and proprietary operations manual) and trade secrets of the Plaintiffs' to Liberty in accordance with ¶¶ 9.g and 9.i of the franchise agreements;

C. Return all electronic and paper copies of customer lists, information, and tax returns to the Plaintiffs in accordance with ¶¶ 9.g and 9.h of the franchise agreements;

D. Be enjoined from any future breach of the noncompetition covenants set forth in ¶ 10.b of the franchise agreements, except that the injunction shall be limited to attempts to compete with the Plaintiffs at the former franchise locations specified in those agreements;

    E.  Be enjoined from holding out to the public that the Defendant is a current or former franchisee of the Plaintiffs' and remove from his former franchise locations all signage and other materials suggesting he is a franchisee of the Plaintiffs', in accordance with ¶¶ 9.a and 9.b of the franchise agreements;

    F.  Be enjoined from using the Plaintiffs' marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol in accordance with ¶¶ 9.b and 9.c of the franchise agreements;

    G.  Be enjoined from using or disseminating any of the Plaintiffs' confidential information and/or trade secrets in accordance with ¶ 12 of the Franchise Agreements;

    H.  Be enjoined from violating the non-solicitation covenants set forth at ¶ 10.d of the franchise agreements.

Within sixty days of this Order, the Plaintiffs shall file any motion for damages and fees. The Plaintiffs shall serve a copy of this Order on the Defendant and file an affidavit of service on the public docket within seven days. This resolves Docket Number 32.

    SO ORDERED.

Dated: November 20, 2020
       New York, New York

                                        ALISON J. NATHAN
                                        United States District Judge