USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/7/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JTH Tax, Inc. d/b/a Liberty Tax Service and Siempretax+ LLC,

Plaintiffs,

–v–

Pawanmeet Sawhney,

Defendant.

19-cv-4035 (AJN)

MEMORANDUM OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs filed this action on May 6, 2019. On November 20, 2020, the Court partially granted Plaintiffs' motion for default judgment as to liability for their claims against Defendant but denied Plaintiffs' motion without prejudice as to damages and attorneys' fees. Now before the Court is Plaintiffs' refiled motion for damages and attorneys' fees. Because Plaintiffs corrected the deficiencies in their prior motion, the Court grants in part Plaintiffs' motion.

**I. Background**

The Court recounted the facts of this case in its November 20, 2020 order that partially granted Plaintiffs' motion for default judgment. Order at 1–3, Dkt. No. 35. Plaintiffs JTH Tax, Inc. d/b/a Liberty Tax Service and Siempre Tax+ LLC entered into a Franchise Agreement with Defendant Pawanmeet Sawhney. *Id.* The Court found that Plaintiffs established prima facie claims for breach of contract, trade secret misappropriation, and violations of the Lanham Act. *Id.* at 5–12. It entered a preliminary injunction against the Defendant to address those violations. *Id.* at 13–14.

Plaintiffs also sought two monetary awards for its breach of contract claim. First, they

sought "at least $880,995.46 plus interest" for the repayment of funds that Plaintiffs loaned to Defendant over the course of three promissory notes executed in 2015, 2016, and 2018, and for amounts owed under the Franchise Agreement. *Id.* at 2, 12. Second, Plaintiffs sought an unspecified sum of attorneys' fees and costs incurred in attempting to collect the amounts owed under the promissory notes, which Defendant agreed to pay. *Id.* at 2, 12–13. The Court denied both requests without prejudice, finding that Plaintiffs had "not provided enough evidence of their damages" for the Court to "ascertain [them] with reasonable certainty," *id.* at 11–12, and that Plaintiffs needed to submit the "amount of fees sought, supported by appropriate evidence," *id.* at 13.

Plaintiffs filed a motion for default judgment as to damages, fees, and costs on January 19, 2021. Motion, Dkt. No. 36. They filed alongside that motion a memorandum of law, two sworn affidavits, and billable hour records. Brief, Dkt. No. 37. The Defendant still has not appeared, and so the Court again deems the motion unopposed.

## II. Legal Standard

As the Court explained in its prior order, the Court accepts as true all well-pleaded allegations in the complaint when assessing the defaulted Defendant's liability. *Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also* Fed. R. Civ. Pro. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). But the assessment of damages requires more from Plaintiffs. Rather than accept the allegations of damages in the complaint as true, the Court must conduct an inquiry consisting of two tasks: (1) "determining the proper rule for calculating damages"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule."

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The court may award only those damages it can ascertain with "reasonable certainty." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). The Court may, for example, rely on "detailed affidavits and documentary evidence" to ascertain the amount of damages, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993), but only if such affidavits reflect "personal knowledge of the facts," *Credit Lyonnais*, 183 F.3d at 154–55.

Because the Court has already concluded that Plaintiffs have made out a prima facie case for their breach-of-contract claims, Order at 5–6, the Court now considers only whether Plaintiffs have established damages, attorneys' fees, and costs with reasonable certainty.

## III. Discussion

Plaintiffs request four monetary awards be paid by Defendant. Brief at 6. First, they seek $176,628.52, plus prejudgment and post-judgment interest, for Defendant's outstanding accounts receivable under the Franchise Agreement. Second, they seek $790,779.72, plus pre-judgment and post-judgment interest, for Defendant's failure to repay the three promissory notes. Third, "a reasonable royalty at least in the amount of $22,000.00" under the Franchise Agreement. Brief at 5. And fourth, $13,903.20 in attorneys' fees and $1,693.32 in costs, plus post-judgment interest.

As explained in the Court's prior order, Plaintiffs' breach-of-contract claims under both the promissory notes and the Franchise Agreement are governed by Virginia law. Order at 5.

### A. Damages from Defendant's Breach of the Promissory Notes

Plaintiffs claim that Defendant owed a total of $790.779.72 on the three promissory notes as of January 19, 2021. Brief at 4. They request that both pre- and post-judgment interest be added to this sum. *Id.* at 6.

Each promissory note provides that in the case of default, Defendant must pay back "the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable." Complaint, Ex. D at 2. In support of their damages figure, Plaintiffs offer the original promissory notes, with principal amounts loaned of $510,000, *id.* at 1; $159,000, Ex. E at 1; and $228,990.72, Ex. F at 1. Plaintiffs also filed a letter sent to Defendant that notified him of his default on both the promissory notes and Franchise Agreement, for which the combined outstanding balance on May 1, 2019, was $959,089.45. Ex. H. Plaintiffs supplement those documents with the sworn declaration of Anthony Cali, a Regional Director with personal knowledge of Defendant's outstanding balance after reviewing Plaintiffs' accounting records. Cali Decl. at 1, Dkt. No. 37-1. Cali states that as of January 19, 2021, Defendant's unpaid principal on the first note was $490,001.25; $125,889.57 on the second note; and $85,300.19 on the third note. *Id.* at 2. Additionally, Defendant owed outstanding interest of $70,601.77; $18,128.10; and $858.84, on each note respectively. *Id.* These amounts sum to Plaintiffs' $790,779.92 figure. *Id.*

Plaintiffs request that Defendant also be ordered to pay interest beyond January 19, 2021. Under Virginia law, "[w]here a specified rate of interest is contracted for upon an obligation, and the rate is lawful, that rate will continue to apply after maturity of the obligation, and even after judgment, until the debt is fully paid." *Am. Standard Homes Corp. v. Reinecke*, 425 S.E.2d 515, 519 (Va. 1993) (quoting *Fleming v. Bank of Va.*, 343 S.E.2d 341, 345 (Va. 1986)). Absent a statutory exception, the lawful interest rate for a loan may not exceed 12 percent. Va. Code § 6.2-303. Finally, Virginia imposes mandatory post-judgment interest at the lawful rate specified in the contract. *Upper Occoquan Sewage Auth. v. Blake Constr. Co., Incorporated/Poole & Kent*, 655 S.E.2d 10, 22–23 (Va. 2008) (citing Va. Code § 8.01-382).

The Court concludes that Plaintiffs have presented adequate evidence for it to ascertain with reasonable certainty Plaintiffs' damages on the promissory notes. *See Putnam Bridge Funding III LLC v. Jenkins*, No. 16CV7012 (AT) (DF), 2017 WL 3267934, at *6 (S.D.N.Y. July 10, 2017), *report and recommendation adopted as modified*, No. 16CIV7012ATDCF, 2017 WL 3267752 (S.D.N.Y. July 31, 2017). Specifically, Plaintiffs are entitled to $701,191.01 on Defendant's outstanding principal, and $89,588.71 in outstanding interest as of January 19, 2021. The Court further concludes that Plaintiffs are entitled to interest that accrues on this outstanding sum of $790,779.92 after January 19, 2021, at the rate of 12 percent annually, until Defendant's debt is fully paid. *See Am. Standard*, 425 S.E.2d at 519.

**B. Damages from Defendant's Breach of the Franchise Agreement**

Plaintiffs next seek $176,628.52 for accounts receivable owed by Defendant under the Franchise Agreement. Brief at 5; *see* Complaint, Ex. B ("Franchise Agreement") § 4(d). In support, Plaintiffs' provided the Franchise Agreement, a notice of default sent to Defendant, Ex. H, and Cali's sworn declaration. Cali states that upon his review of Plaintiffs' records, Defendant owes $176,628.52 in past royalties under the Franchise Agreement. Cali Decl. at 1–2. Plaintiffs again seek pre- and post-judgment interest on this amount.

The Court finds that Plaintiffs' damages for accounts receivable are ascertainable with reasonable certainty. Plaintiffs are entitled to $176,628.52 for Defendant's outstanding balance. Under the terms of the Franchise Agreement, Plaintiffs are also entitled to interest that accrues at 12 percent annually. Franchise Agreement § 4(h). That interest rate, like the rate for the promissory notes, is lawful and appropriate under Virginia law. *See Am. Standard*, 425 S.E.2d at 519. Finally, Plaintiffs are entitled to accrue post-judgment interest at the 12-percent rate specified in the contract. *See* Va. Code § 8.01-382.

Also arising from Defendant's breach of the Franchise Agreement, Plaintiffs request "at least" $22,000 in royalties for the years 2020 and 2021. Brief at 5. Specifically, the Franchise Agreement had a 5-year term, Franchise Agreement § 2(a), which ran from the effective date of December 6, 2016, to December 6, 2021, *id.* at 26. Defendant was required to pay a royalty each tax year, beginning May 1 through April 30, of either 14% of gross receipts or, if greater, $11,000. *Id.* § 4(d)(iii). Cali avers that Defendant still owes royalties for 2020 and 2021. Cali Decl. at 2–3.

The Court concludes that Plaintiffs' damages for unpaid royalties are ascertainable with reasonable certainty. Defendant would owe royalties equal to 14% of gross receipts for the years 2020 and 2021. But Plaintiffs offer no evidence of Defendant's gross receipts, if any, during that period. The Court therefore imposes the minimum royalty amount due of $11,000 for each year, totaling $22,000. Additionally, beginning 15 days after each royalty payment was due, Plaintiffs began to accrue interest at a rate of 12 percent. Franchise Agreement § 4(h). Defendant's minimum royalty payment for the tax year ending April 30, 2020, was due May 5, 2020, and the minimum royalty payment for the tax year ending April 30, 2021, was due May 5, 2021. *Id.* at § 4(g). Therefore, Defendant was obligated to pay 12 percent interest on the first $11,000 royalty starting on May 20, 2020, and to pay interest on the second $11,000 starting on May 20, 2021.

**C. Attorneys' Fees and Costs**

Last, Plaintiffs seek attorneys' fees and costs incurred in enforcing and collecting on their promissory notes. Brief at 5. Generally, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253

(2010)). Here, Defendant agreed in the promissory notes "to pay all attorneys' fees and other costs and expenses that [Plaintiffs] may incur in connection with the collection or enforcement of this Note." Complaint, Ex. D at 1; *see also* Ex. E at 1; Ex. F at 1.

Like damages, the Court must ascertain attorneys' fees and costs with reasonable certainty. Attorneys' fees must also be reasonable, which is defined as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Phillips v. Pizza*, No. 17-cv-6112 (JPO), 2018 WL 2192189, at *2 (S.D.N.Y. May 14, 2018). A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 192 (2d Cir. 2008). Additionally, Plaintiffs must "document the application for [fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Canaveral v. Midtown Diner NYC, Inc.*, No. 19CV635GBDJLC, 2019 WL 4195194, at *7 (S.D.N.Y. Sept. 5, 2019), *report and recommendation adopted*, No. 19CIV635GBDJLC, 2019 WL 6170058 (S.D.N.Y. Nov. 19, 2019) (quoting *N.Y. State Assn'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). The Court has "considerable discretion" to determine reasonable attorneys' fees. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008)).

Plaintiffs seek a total of $13,903.20 in fees and $1,693.32 in costs. Brief at 5. In support, Plaintiffs submit the declaration of Peter Siachos, lead counsel on the complaint, and counsel's time records. Siachos Decl., Dkt. No. 37-1. Siachos explains that three partners and one paralegal billed a total of 55.2 hours to the case. *Id.* at 2. Two partners with 16 and 12 years'

experience each billed at $350 per hour, one partner with 10 years' experience billed at $310 per hour, and the paralegal billed at $150 per hour. *Id.* Plaintiffs also submit an accounting of its costs, which primarily resulted from filing fees and service of process. Brief, Ex. A ("Records") at 1.

The Court first concludes that the hourly rates were imminently reasonable in the New York market for work performed by experienced partners in a breach-of-contract dispute. *See Bhungalia Fam., LLC v. Agarwal*, 317 F. Supp. 3d 727, 739 (S.D.N.Y. 2018) (upholding $495 per hour for a partner with "20-plus years of experience"); *Weiwei Gao v. Sidhu*, No. 11 CIV. 2711 WHP JCF, 2013 WL 2896995, at *6 (S.D.N.Y. June 13, 2013) (upholding a $550 hourly rate in commercial litigation and collecting cases of higher rates). The paralegal's rate of $150 is similarly in line with prevailing rates in New York. *See Bhungalia*, 317 F. Supp. 3d at 741 (collecting cases).

As to the number of hours billed, however, the Court identifies four concerning aspects of Plaintiffs' records. First, 55.2 hours exceeds significantly what other courts in this district have found to be reasonable in "a relatively straightforward contract claim—a failure to pay on an unconditional guaranty." *Bhungalia*, 317 F. Supp. 3d at 744 (collecting cases that approved 19 to 21 hours billed, but reducing attorneys' fees by 25% for counsel that billed 37.4 hours). Second, Plaintiffs' records do not distinguish between work performed on the promissory-note claim and Plaintiffs' other claims. Plaintiffs are entitled only to those attorneys' fees incurred in collecting on the promissory notes, though the Court acknowledges that work on one claim may overlap with that on other claims. Third, Plaintiffs have redacted certain details for items totaling 3.6 billed hours. Records at 6–9. And fourth, only partners billed on the case when they could have used "a more junior attorney" to complete some tasks "at a lower hourly rate."

*Bhungalia*, 317 F. Supp. 3d at 744.

The Court concludes that these facts justify a 25% reduction in Plaintiffs' requested attorneys' fees, resulting in a fees award of $10,427.40. *See Carey*, 711 F.2d at 1146 (permitting a percentage reduction of attorneys' fees "as a practical means of trimming fat from a fee application"); *e.g.*, *Bhungalia*, 317 F. Supp. 3d at 744 (reducing attorneys' fees by 25% in a similar loan-collection action). The Court does not impose a larger percentage reduction because it finds that counsel's hourly rates are already below the prevailing rates found to be reasonable by other courts in this district. The Court also concludes that Plaintiffs' costs are reasonable.

Finally, Plaintiffs request post-judgment interest on the attorneys' fees and costs owed. Like Plaintiffs' other monetary awards under the promissory notes, the proper post-judgment interest rate is 12 percent, beginning on the day that the Court awards fees. *See* Va. Code § 8.01-382; *Hubbard v. Total Commc'ns, Inc.*, 623 F. Supp. 2d 270, 272 (D. Conn. 2009) (awarding post-judgment interest on attorneys' fees from the date of its order).

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS the Plaintiffs' motion for default judgment as to damages for amounts owed under the promissory notes and the Franchise Agreement. The Court GRANTS in part Plaintiffs' request for attorneys' fees and costs. The Court awards Plaintiffs the following:

A. $790,779.92, plus interest that accrues since January 19, 2021, at an annual rate of 12 percent, for default on the promissory notes;

B. $176,628.52, plus interest that accrues since January 19, 2021, at an annual rate of 12 percent, for accounts receivable under the Franchise Agreement;

C. $11,000, plus interest that accrues since May 20, 2020, at an annual rate of 12

percent, for royalties owed May 5, 2020;

D. $11,000, plus interest that accrues since May 20, 2021, at an annual rate of 12 percent, for royalties owed May 5, 2021;

E. $10,427.40, plus interest accrued at an annual rate of 12 percent from the date of this Order, for attorneys' fees;

F. $1,692.32, plus interest accrued at an annual rate of 12 percent from the date of this Order, for costs.

The Plaintiffs shall serve a copy of this Order on the Defendant and file an affidavit of service on the public docket within five days.

This resolves docket number 36. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: September 7, 2021
New York, New York

ALISON J. NATHAN
United States District Judge